Receipt number AUSFCC-10980141

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **TELOS CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No. ___25-2191 C___ |
| | ) | |
| **UNITED STATES,** | ) | Judge _____ |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | _____ |

### COMPLAINT

Telos Corporation ("Telos" or "Contractor"), by and through its undersigned counsel, seeks *de novo* review of the claim submitted to the United States Department of the Air Force ("USAF"), decided via final decision of the cognizant USAF contracting officer on May 29, 2025 (the "COFD"), allowing $72,707.95 for extended use software under license, but denying the balance of the sum certain amount of $9,350,000.00 sought. This is a sponsored pass-through claim for the benefit of Bank Financial, NA ("BFNA"), which provided Telos with the funding necessary to perform the underlying contract. Telos, on behalf of BFNA, alleges as follows:

### PARTIES

1. Telos is a Maryland corporation with its principal place of business located at 19886 Ashburn Road, Ashburn, VA 20147-2356. Telos provides information technology software, products, and support services to its customers, some of which are agencies and departments of the U.S. Government. At all times relevant to the claims herein, Telos was an authorized distributor of certain software for third party FedResults, Inc. ("FedResults"), holder of Department of Defense ("DoD") Enterprise Software Initiative Blanket Purchase Agreement No. N6600121A0026 ("ESI BPA").

1

2.    Defendant is the United States of America, acting by and through USAF, located at AFLCMC/GBK, 501 East Moore Drive, Bldg. 884, Maxwell AFB-Gunter Annex, AL 36114.

## NATURE OF THE ACTION

3.    Telos requests *de novo* review of the sponsored claim at issue in the COFD. The COFD denied Telos' claim for the $9,350,000.00 loss incurred by BFNA to allow Telos to procure and provide certain software products under license from UiPath Inc. ("UiPath"), and related services, in support of Delivery Order No. FA877122F0109, dated September 29, 2022, including all modifications, supplements, and attachments thereto (the "Order"). The Order was awarded under the ESI BPA and incorporated Telos Quote No. 13734-902922.40M.00 ("Quote") (collectively with the Order and the ESI BPA, the "Contract"). On February 9, 2023, USAF issued a purported notice of non-renewal to Telos declining to formally exercise the first option period of the Contract (the "Non-Renewal Notice").

4.    Telos and ePlus Government, inc. ("ePlus")[1] are parties to a certain agreement ("Funding Agreement") under which Telos assigned to ePlus its right to, title to, and interest in all payments received under certain delivery orders, as set forth in successive schedules to the Funding Agreement. **Exhibit 1**. Pursuant to the Funding Agreement, and schedule number 1 thereto ("Schedule No. 1"), Telos assigned its right to payments from USAF under the Order to ePlus in exchange for a designated assignment price. Exhibit 1 at 7-9.

5.    In turn, ePlus and BFNA are parties to a separate agreement (the "Assignment Agreement") under which ePlus assigned to BFNA its rights under the Funding Agreement and Schedule No.

---

[1] In an unrelated transaction, ePlus has since changed its name from ePlus Government, inc. to PEAC Public Sector, inc. Because the entity was known as ePlus at all times relevant to the facts in this Complaint, Telos continues to refer to it as ePlus here.

1, including the right to receive payments under the Contract as remitted by or on behalf of USAF. **Exhibit 2**. BFNA paid directly to Telos the funding needed for Telos to purchase from its vendor, FedResults, the licenses required under the Order.

6.    At the time the Order was issued, ePlus was subject to an existing agreement with Wilmington Trust, National Association ("Wilmington Trust") that established Wilmington Trust as paying agent for ePlus (the "Agency Agreement"). **Exhibit 3**. On October 4, 2022, Telos formally assigned its right to, title to and interest in the Order payments to Wilmington Trust, as the paying agent for ePlus. Wilmington Trust provided notice of this assignment to the USAF contracting officer and disbursement office. **Exhibit 4**.

7.    Pursuant to the Agency Agreement, Wilmington Trust, ePlus, and BFNA executed a further agreement under which any payments received by Wilmington Trust were to be remitted directly to BFNA, thereby establishing Wilmington Trust as paying agent for BFNA in addition to ePlus. **Exhibit 5**.

## JURISDICTION, VENUE, AND TIMELINESS

8.    Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. § 1491(a)(1) and 28 U.S.C. § 1491(a)(2) as this action arises out of a contract with the United States and relates to a dispute concerning USAF's breach of contract.

9.    Jurisdiction and venue are also proper in this Court pursuant to the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 ("CDA"), including § 7104(b)(1), as Telos filed a timely certified claim under the CDA with the contracting officer on August 19, 2024 for costs incurred and amounts currently due under the Order (the "Certified Claim"). On May 29, 2025, the contracting officer for USAF, Christopher Artis, issued the COFD, which denied all but $72,707.95 (no portion of

which has to date been paid by USAF) of the total amount sought in the Certified Claim. **Exhibit 6**.[2]

10. Telos now appeals the May 29, 2025, COFD.

11. This Complaint is timely filed within twelve months of the date Telos received the COFD in compliance with 41 U.S.C. § 7104(b)(3), and within the six-year statute of limitations prescribed by 41 U.S.C. § 7103(a)(4)(A).

## FACTUAL BACKGROUND

**A. The Solicitation and USAF's Requirements**

12. On September 20, 2022 and September 22, 2022, USAF issued Request for Quote FA8771-22-Q-0045 for UiPath software licenses to support the Robotic Process Automation Center of Excellence Enterprise ("RPA COE") program management office ("RFQ").[3] The RFQ included three attachments, one of which was a redacted document entitled "Fair Opportunity Exception Justification" ("J&A"). **Exhibit 7**.[4]

---

[2] For reasons not stated in the COFD, the contracting officer refers to a settlement figure offered by Telos and BFNA prior to issuance of the COFD and then proceeds to characterize that figure as the "total claim proposed counter-offer settlement figure" which he went on to deny, save only the sum of $72,707.95. Exhibit 6 at 1, 6. Importantly, the sum certain sought in the Certified Claim has always been $9,350,000.00. Any other amount offered by Telos and BFNA to settle the Certified Claim is not germane to these proceedings and is subject to the restrictions on use established under FRE Rule 408.

[3] The second Request for Quotation changed only the deadline for response (from September 22, 2022, to September 23, 2022).

[4] Pages 5-10 and 15-20 of Exhibit 7 are redacted and include the legend "Controlled Unclassified Information." These pages, as marked and redacted, were attached to the RFQs, which were publicly available at the time of posting. On information and belief, any "Controlled Unclassified Information" present on these pages was redacted by USAF at the time the RFQ was issued publicly and remains redacted as attached here.

13. The J&A states in relevant part: "Description of Limitation: In accordance with (IAW) FAR 8.405-6(a)(1)(i)(B), this procurement will be limited to a single brand name via the Department of Defense (DoD) Enterprise Software initiative (ESI), Enterprise Software Agreement (ESA)." *Id.* at 5. The specified brand for the required software licenses was UiPath. *Id.*

14. The J&A also stated: "In accordance with DFARS 208.7402 Departments and Agencies shall fulfill requirements for commercial software and related services, such as maintenance, in accordance with the DoD Enterprise Software Initiative (ESI) Blanket Purchase Agreement (BPA)." *Id.* at 8.

15. The J&A provided the following justification for acquiring UiPath licenses across various USAF divisions:

> This justification is to limit competition of Robotic Process Automation (RPA) software licenses to UiPath through the DoD ESI BPA contract vehicle. This limitation will ensure continuity of operations, continued realization of return on investment from operational automations, and provide a stable RPA solution to the 2600, and growing, enterprise RPA users.

> The RPA Center of Excellence (RPA COE) branch has a requirement to purchase robotic process automation licenses in support of the CSAF's Action Order "Accelerate Change or Lose." The RPA COE began as a pilot in FY20 utilizing UiPath RPA software to enable Airmen across the enterprise to identify and automate mundane, repeatable tasks giving time back to our workforce to focus on mission critical, value added tasks.

*Id.* at 6.

16. Attachment 1 to the RFQ identified a base period of performance, September 29, 2022–January 29, 2023 ("Base Period"), and three option periods of twelve months duration each, expiring on January 29, 2024, January 29, 2025, and January 29, 2026, respectively. The Base Period and option period one ("OP1") each called for a "UiPath Hyperautomation Bundle" consisting of licenses for 2,500 end users for each period. For option period two ("OP2"), USAF again required the "UiPath Hyperautomation Bundle" consisting of licenses for 2,500 end users,

plus "UiPath Automation Developer – Named User" licenses for an additional 2,000 end users, for a total of 4,500 end users for that period. For option period three ("OP3") USAF required three units of the "UiPath Hyperautomation Bundle," each unit consisting of licenses for 2,500 end users, for a total of 7,500 end users for that period. Thus, across the base and all option periods, the RFQ called for licenses sufficient to support a total of 17,000 end users (collectively, the "Licensed Software").

17. The resulting award was to be firm fixed price, to the offeror providing the lowest priced, technically acceptable quote. *Id.* at 1, 11.

### B. The Telos Quote and USAF Delivery Order

18. In response to the RFQ, Telos submitted an initial quote on September 22, 2022. Telos issued a revised quote on September 28, 2022 responding to USAF's revised requirement for a twelve-month base period followed by three twelve-month option periods. Telos submitted a final revised quote (the Quote, No. 13734-092922.40M.00) on September 29, 2022, to provide for a four-month base period and three twelve-month option periods, for an aggregate fixed price of $10,308,600.00 to be paid by USAF in four separate installments. **Exhibit 8.**

19. To offer the best pricing to the government, and obtain the best pricing from FedResults, Telos elected to purchase the licenses for all 17,000 end users up front (2,500 for each of the Base Period and OP1, OP2 and OP3 (10,000), plus 2,000 more for OP2, plus 5,000 more for OP3, for a combined total of 17,000). Purchasing all the licenses for 17,000 end users up front allowed Telos to submit a quote that offered discounted license fees for the Base Period and each option period, thereby providing USAF the opportunity to pay the full amount of the license fee spread out over several installments, thus providing significant cost and payment advantages to the government.

20. Leveraging the Funding Agreement with ePlus, and ePlus's Assignment Agreement with BFNA, Telos obtained sufficient advance funding to enable it to purchase the licenses for all 17,000 end users from FedResults, with associated discounts, up front, and prepared the Quote accordingly.

21. Specifically, the Quote was premised and priced on the understanding that USAF would utilize the Licensed Software for the full forty months.

22. The Quote was also conditioned on the inclusion of certain terms and conditions in the government's delivery order. *See* Exhibit 8 at 6 ("Please include the following statement [terms and conditions] in the gov't order to Telos to indicate acceptance of this quote…."). USAF subsequently incorporated those terms and conditions in the Order. *See* **Exhibit 9** at 5 ("The terms and conditions of Telos Quote No. 13734-092922.40M.00 are incorporated herein and shall take precedence over any conflicting terms.").

23. The terms and conditions in the Quote and incorporated into the Order expressly altered the order of precedence provision contained in FAR 52.212-4(s), as follows:

> FAR 52 212.4, paragraph (s), item (1) shall be tailored to state that these terms and conditions shall be deemed a part of and incorporated into item (1) the schedule of supplies/services. This Precedence clause shall supersede any and all other reference to the order of precedence. The Delivery Order, then the prime contract, shall follow the precedence set forth in FAR 52.212-4, paragraph (s).

Exhibit 8 at 1.

24. Importantly, the Quote also stated as follows:

> The Government has the option to renew this order beyond the Base Period. **Provided the Government obtains such sufficient funds, the Government will exercise all renewal options via an order modification executed by or other writing of an authorized government representative.** The rights of the Government to terminate shall apply to the entire delivery order, including any option periods thereof and not allow partial termination of the Software.

*Id.* (emphasis added). This provision (the "Renewal Conditions") was expressly incorporated into the Order. Exhibit 9 at 5.

25. The Renewal Conditions imposed a two-step process for USAF to exercise an option period under the Order. First, Congress had to appropriate sufficient funds to fund performance ("Step One"). Second, after Congress appropriated sufficient funds, an authorized government representative was required to obligate those appropriated funds to the Order by executing a written order modification or other writing to extend the period of performance ("Step Two").

26. Upon information and belief, USAF agreed to the Renewal Conditions in exchange for the discounted pricing reflected in the Quote, with the full understanding that for each option period, so long as Congress appropriated sufficient funding (Step One), USAF was obligated to fund and exercise that option period via a written order modification (Step Two).

27. Because the Quote was priced, premised, and funded on the understanding that USAF expected to utilize the Licensed Software for the full forty months, BFNA expected and understood that USAF anticipated exercising each option period (Step Two) so long as Congress appropriated sufficient funding to allow USAF to cover the cost of each option period (Step One), and relied upon that expectation when deciding to participate in the opportunity.

28. On September 29, 2022, USAF awarded the Order (No. FA877122F0109) to Telos for delivery of UiPath software licenses starting with 2,500 end user licenses to be delivered at the start of the Base Period, and the rest to be provided during performance. USAF and Telos agreed that the total license fee for forty months and all user licenses was $10,100,000.00 (the "License

Fee").[5] Exhibit 9 at 3-4. USAF agreed to pay the specified portion of the License Fee at the start of the Base Period and each renewal period (each of OP1, OP2 and OP3). *Id.*

29.  The Order did not contain any provision allowing for partial performance on the part of Telos during any period of performance, or partial payment on the part of USAF of the License Fee due under the Contract, other than as specifically agreed to for each period of performance.

30. The Order made no changes to the Quote and took no exception to any of the terms and conditions required therein, including the Renewal Conditions.

### C. Congressional Appropriations and Continuing Resolutions Fiscal Years 2023–2025

31. The Order was awarded on September 29, 2022, and the Base Period of performance was therefore funded with fiscal year ("FY") 2022 appropriated funding. Exhibit 9 at 1. In turn, OP1 was to be funded by FY 2023 appropriated funding, OP2 with FY 2024 appropriated funding, and OP3 with FY 2025 appropriated funding.

32. On September 30, 2022, Congress enacted the first of a series of continuing resolutions to fund operations for DoD and its various branches, including USAF, for FY 2023 at the same spending level authorized for FY 2022 until Congress passed legislation authorizing a different spending level through a separate appropriations act.[6]

33. Thus, as of September 30, 2022, the condition set forth as Step One of the Renewal Conditions was satisfied, as Congress had appropriated sufficient FY 2023 funding to cover the

---

[5] The total License Fee includes CLIN 0001 ($750,000.00), CLIN 1001 ($1,800,000.00), CLIN 2001 ($3,000,000.00) and CLIN 3001 ($4,550,000.00).

[6] Continuing Appropriations and Ukraine Supplemental Appropriations Act, 2023, Pub. L. No. 117-180, 136 Stat. 2114 (2022); *see also* Further Continuing Appropriations and Extensions Act, 2023, Pub. L. No. 117-229, 136 Stat. 2308 (2022); Further Additional Continuing Appropriations and Extensions Act, 2023, Pub. L. No. 117-264, 136 Stat. 4167 (2022).

cost of the Licensed Software for OP1. Under the terms of the Order, once Step One was satisfied, USAF was required to issue the written modification or other authorized writing (Step Two) to obligate the available funds and extend the Order for OP1.

34. On December 16, 2022, Congress enacted legislation appropriating additional funding for FY 2023, including funding for DoD and, more specifically, for USAF operations.[7] Separate and apart from the continuing resolution enacted on September 30, 2022, the December 16, 2022 appropriation satisfied Step One of the Renewal Conditions and obligated USAF to complete Step Two.

35. Because Step One of the Renewal Conditions was satisfied on or before January 29, 2023, the end date of the Base Period, USAF was obligated to complete Step Two—*i.e.*, to prepare and issue a written modification or other writing by an authorized official obligating the appropriated funds in an amount sufficient to cover the remaining portion of the License Fee for OP1, and exercising OP1.

36. According to the COFD, USAF failed to allocate the requisite funding from available FY 2023 appropriated funds, failed to obligate sufficient appropriated funding to the Contract to cover the sum of $1,800,000.00 due for OP1, and failed to issue the requisite written modification or other writing exercising OP1, as required by the Order.

37. On November 17, 2023, Congress enacted the first of a series of continuing resolutions authorizing and funding DoD's operations for FY 2024 at the same spending levels previously

---

[7] James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, 136 Stat. 2395 (2022); *see also* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, 136 Stat. 4459 (2022).

enacted for FY 2023 spending.[8] This appropriation satisfied Step One of the Renewal Conditions for OP2, and obligated USAF to complete Step Two for OP2.

38. On December 22, 2023, Congress enacted legislation appropriating additional funding for FY 2024, including funding for DoD and, more specifically, for USAF operations.[9] Separate and apart from the continuing resolution enacted on November 17, 2023, the December 22, 2023 appropriation also satisfied Step One of the Renewal Conditions and obligated USAF to complete Step Two for OP2.

39. Because the condition set forth in Step One was satisfied on or before January 29, 2024, the end date of OP1, USAF was obligated to complete Step Two—*i.e.*, to prepare and issue a written modification or other writing by an authorized official obligating the appropriated funding to cover the cost of the remaining portion of the License Fee due for OP2, and exercising OP2.

40. USAF failed to allocate the requisite funding from available FY 2024 appropriated funds, failed to obligate sufficient appropriated funding to the Contract to cover the remaining portion of the License Fee due for OP2, and failed to issue the requisite written modification or other writing exercising OP2, as required by the Order.

41. On September 26, 2024, Congress enacted the first of a series of continuing resolutions to

---

[8] Continuing Appropriations Act, 2024 and Other Extensions Act, Pub. L. No. 118-15, 137 Stat. 71 (2023); *see also* Further Continuing Appropriations and Other Extensions Act, 2024, Pub. L. No. 118-22, 137 Stat. 112 (2023); Further Additional Continuing Appropriations and Other Extensions Act, 2024, Pub. L. No. 118-35, 138 Stat. 3 (2024); Extension of Continuing Appropriations and Other Matters Act, 2024, Pub. L. No. 118-40, 138 Stat. 17 (2024).

[9] National Defense Authorization Act for Fiscal Year 2024, Pub. L. No. 118-31, 137 Stat. 136 (2023); *see also* Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25 (2024); Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 460 (2024).

fund DoD's operations and those of its branches, including USAF, for FY 2025.[10] This appropriation satisfied Step One of the Renewal Conditions for OP3, and obligated USAF to complete Step Two for OP3.

42. On December 23, 2024, Congress enacted legislation appropriating additional funding for FY 2025, including funding for DoD and, more specifically, for USAF operations.[11] Separate and apart from the continuing resolution enacted on September 26, 2024, the December 23, 2024 appropriation satisfied Step One of the Renewal Conditions and obligated USAF to complete Step Two for OP3.

43. Because the condition set forth in Step One was satisfied on or before January 29, 2025, the end date for OP2, USAF was obligated to complete Step Two—*i.e.*, to prepare and issue a written modification or other writing by an authorized official obligating the available funds to the Contract, and exercising OP3.

44. USAF failed to allocate the requisite funding from available FY 2025 appropriated funds, failed to obligate sufficient appropriated funding to the Contract to cover the remaining portion of the License Fee due for OP3, and failed to issue a written modification or other writing exercising OP3, as required by the Order.

[10] Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 118-83, 138 Stat. 1524 (2024); *see also* American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722 (2024).

[11] Servicemember Quality of Life Improvement and National Defense Authorization Act for Fiscal Year 2025, Pub. L. 118-159, 138 Stat. 1773 (2024); *see also* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, 139 Stat. 9 (2025).

**D.  Telos Timely Performed its Obligations by Delivering to USAF License Keys for the Licensed Software**

45. On October 1, 2022, Telos transmitted to USAF digital license keys issued by UiPath that comprised licenses for all 2,500 end users as required by the Order for the Base Period ("License Keys"). **Exhibit 10**.

46. The License Keys provided USAF with access to each of the products included in the UiPath Hyperautomation Bundle. *Id.* at 9-11. Each of the License Keys had a start date of September 30, 2022, and an end date of January 29, 2026. *Id.*

47. As such, the License Keys constituted the licenses for 2,500 USAF end users as required in the Order under each of the Base Period, OP1, OP2, and OP3.

48. USAF executed a certificate of acceptance of the License Keys, which had a start date of September 30, 2022, and an end date of January 29, 2026, effective September 29, 2022 ("Certificate of Acceptance"). **Exhibit 11**. USAF did not object, reject or take exception to the January 29, 2026 end date for the delivered License Keys.

49. USAF confirmed in the Certificate of Acceptance that the License Keys were delivered to USAF, were inspected by USAF, were found by USAF to be in good order, and were therefore accepted by USAF. *Id.*

50. On Oct. 3, 2022, USAF digitally signed a material inspection and receiving report further confirming the License Keys were received in good condition ("Material Inspection and Receiving Report"). **Exhibit 12.**

51. As evidenced by the Certificate of Acceptance and the Material Inspection and Receiving Report, USAF knew or should have known that the License Keys were activated and authorized for 2,500 end users through January 29, 2026—forty months after award of the Contract—a period of time that covered the Base Period, OP1, OP2, and OP3.

13

52. Through its acceptance of the License Keys (which per the terms of the license transmittal had an end date of January 29, 2026), USAF committed itself, at minimum, to pay all fees due for the License Keys, including all fees due for the period of performance for those licenses for 2,500 end users covered by the base period ($750,000.00) and OP1 ($1,800,000.00), all fees due for the period of performance for those licenses for 2,500 end users covered by OP2 ($1,666,666.67), and all fees due for the period of performance for those licenses for 2,500 end users covered by OP3 ($1,516,666,67) (a total of $5,733,333.33).

53. On information and belief, at all times between October 1, 2022, and the filing of this Complaint, USAF has had continuous access to the License Keys.

54. Following delivery of the License Keys, on October 27, 2022, Telos issued invoice no. 223003 to ePlus seeking a payment of $9,092,266.17 for "UiPath – Hyperautomation Bundle." **Exhibit 13.**

55. On November 10, 2022, ePlus provided to BFNA assignment information for the Order and instructed BFNA to wire $9,092,266.17 to Telos. **Exhibit 14.**

56. On or about November 10, 2022, BFNA wired to Telos the sum of $9,092,266.17 as payment in full of Telos invoice no. 223003 ("BFNA Payment"). The BFNA Payment covered all items listed in the Quote and Schedule No. 1 to the Funding Agreement. Exhibit 13. Thus, the BFNA Payment covered (i) licenses for 2,500 users for the base period and each of OP1, OP2, and OP3, plus (ii) licenses for 2,000 additional end users for OP2, plus (iii) licenses for 5,000 additional end users for OP3—in total, licenses for 17,000 end users.

57. On December 22, 2022, USAF remitted payment of $750,000.00 to Telos, which in turn remitted payment to ePlus. **Exhibit 15.**

**E.   USAF's Continued Use of the Licensed Software Starting on January 30, 2023**

58. The Base Period expired on January 29, 2023. On January 25, 2023, Alexia (Paige) Zukowski (USAF) spoke with Andrew Hoosen (Telos), regarding USAF's efforts to obtain funding for OP1. **Exhibit 16.** Mr. Hoosen responded to Ms. Zukowski via email acknowledging the earlier call and referring to a payment "grace period" that ostensibly would allow USAF an additional fourteen days to remit the payment then due (*i.e.*, the license fee installment agreed upon for OP1), while still allowing USAF to use the software without disruption. *Id.* Ms. Zukowski acknowledged that response and reiterated USAF's intent to "avoid work stoppages" with regard to the Licensed Software, *i.e.*, USAF's intent to ensure that USAF retained access to UiPath software after the Base Period ended on January 29, 2023. *Id.*

59. On January 27, 2023, the contracting officer issued a form of memorandum purporting to confirm an understanding between USAF and Telos to extend by fourteen days the time period for exercising OP1 ("January 27 Memorandum"). **Exhibit 17.** That memorandum does not, however, accurately reflect the substance of the email that Mr. Hoosen (Telos) sent on January 25, which at most referred only to a fourteen-day extension of the due date for USAF's then-due payment for OP1, and did not offer to extend the Base Period itself by any amount of time. Exhibit 16.

60. Along with the purported fourteen day "grace period," the January 27 Memorandum provided Telos with a formal notice of USAF's intent to exercise OP1. Exhibit 17. USAF required Telos to sign and return a copy of the January 27 Memorandum to "acknowledge[] the notification requirement." *Id.* at 4; *see also id.* at 1 (Ms. Zukowski asks Mr. Hoosen to return "the bottom portion of the NOI"; Mr. Hoosen responds with "a signed copy of the Notice of Intent.").

61. The January 27 Memorandum did not change the start and end dates of the Base Period, or any of the Option Periods, including OP1. That same Memorandum did not provide or offer to

provide Telos with a price increase or additional consideration for delaying the due date for the License Fee for OP1. In short, the January 27 Memorandum did not modify the terms of the Order and was not mutually binding on Telos or USAF. Instead, it informed Telos of USAF's intent to exercise OP1 and simultaneously informed Telos that USAF would make payment for OP1 no later than fourteen days into OP1.

62. Only later, when USAF belatedly declined to exercise OP1, did it become clear to BFNA that the January 27 Memorandum was a mechanism to allow USAF more time to complete arrangements to acquire the same UiPath software via another source while at the same time maintaining the status quo with regard to USAF's continued ability to access the UiPath software via the previously-delivered License Keys.

63. USAF and Telos did not take any action to modify the Order—either unilaterally or bi-laterally. At no time did the parties alter the expiration date for the Base Period (January 29, 2023), or to alter the start date for OP1 period of performance (January 30, 2023). At all times, the agreement between the parties provided that the Base Period expired on January 29, 2023, and the period of performance for OP1 commenced on January 30, 2023.

64. Because USAF continued to use the software during the period of performance for OP1, the full amount of the OP1 installment amount ($1,800,000.00) became due and payable on January 30, 2023 as required under the Order.

65. At no time did Telos agree that the License Fee amount for OP1 could be split into installments to be paid incrementally during 2023.

66. At no time did Telos and USAF negotiate a daily license fee for end users of the Licensed Software, and neither the Order nor the Quote provided for such.

67. The Licensed Software USAF purchased from Telos under the Order consisted of UiPath licenses. UiPath, however, was not a party to the Order.

68. UiPath maintains certain end user license terms that are set forth in a software license agreement and end user license agreement ("UiPath License Agreement") that the General Services Administration negotiated on behalf of all DoD buying activities, including USAF, and included as Attachment 3 to the ESI BPA. **Exhibit 18.** The Licensed Software procured under the ESI BPA is subject to the UiPath License Agreement.

69. As a separate legal entity, and without any agreements in place with UiPath, Telos was not authorized to make any agreements binding on UiPath; nor was it authorized to change, alter or supplement UiPath's license terms as set forth in the UiPath License Agreement.

70. Despite the non-specific reference to a grace period for payment identified by Mr. Hoosen (Exhibit 16), the UiPath License Agreement does not expressly mention a "grace period" in any context. Exhibit 18. Even if the UiPath License Agreement could be interpreted to allow a period of time in which, under certain circumstances, extended software usage beyond license expiration or termination were permissible pending receipt of a delayed payment, any such term would not and did not alter, amend or revise the terms agreed upon between Telos and USAF in the Order. Exhibit 8 at 6 (order of precedence clause); Exhibit 9 at 5 (incorporating the Quote's terms and conditions).

71. As of January 30, 2023, upon information and belief, UiPath had already been paid in full by FedResults for all Licensed Software delivered to Telos and thence delivered to USAF, for the Base Period and OP1, and to be delivered for OP2 and OP3. As of January 30, 2023, FedResults had been paid in full by Telos, and Telos had been paid in full by BFNA.

72. On January 30, 2023—the start date of OP1—USAF and its 2,500 end users did not stop accessing or using the Licensed Software. Exhibit 6 at 4.

73. On information and belief, at no time did USAF delete or cause others to delete UiPath software from USAF servers and devices. At no time did USAF return or cause others to return the License Keys to Telos. Instead, as set forth in the COFD and in publicly available information, USAF continues to use UiPath software as of the date of this filing. Exhibit 6, **Exhibit 19**.

74. Instead of returning the License Keys after expiration of the Base Period on January 29, 2023, or deleting UiPath software accessed through the License Keys from USAF devices, USAF continued to use the Licensed Software as authorized by the License Keys. Exhibit 6 at 4. This was consistent with USAF's untimely, last minute notice of intent that USAF intended to exercise OP1. Exhibit 17.

75.  On February 9, 2023, having apparently acquired in the interim the same UiPath software from another source, USAF issued the Non-Renewal Notice in which it purported to inform Telos that it was not exercising OP1. **Exhibit 20**; *see also* Exhibit 6 at 4 ("Another agency was able to purchase UiPath licenses and provide to [USAF].").

76. After issuing the Non-Renewal Notice, USAF continued to use and access UiPath software, either under the Telos-furnished License Keys or newly issued license keys provided by another source, in either event confirming by its actions that it had a *bona fide* need for the UIPath software. Exhibit 6, Exhibit 19.

77. On information and belief, it typically requires a period of weeks, if not months, for an agency to develop a requirement, identify sources, solicit quotes or offers, receive and evaluate such quotes or offers, select a source, and award a contract or order. It also requires additional time for agencies to coordinate an intra-agency purchase or transfer of licenses, including the

coordination of funding, paperwork, and the licenses themselves. As such, USAF's arranging for an alternate source of UiPath software in all likelihood took place weeks if not months in advance of USAF's issuance of the Non-Renewal Notice.

78. On February 1, 2024, Telos delivered or caused to be delivered additional license keys for OP2, consisting of license keys for an additional 2,000 end users ("OP2 License Keys"). **Exhibit 21**. The OP2 License Keys had a start date of January 30, 2024 and an end date of January 29, 2026. *Id.* at 5. Thus, the OP2 License Keys, like the License Keys, were available to and accessible by USAF throughout the period of performance for OP2 and OP3.

### F. BFNA's Claim and the Contracting Officer's Final Decision

79. On August 19, 2024, Telos submitted the Certified Claim on behalf of BFNA. In it, Telos presented the contracting officer with a series of allegations and claims asserting USAF's liability for the damages of Telos' funding stakeholder, BFNA, which total $9,350,000.00. *See generally* Exhibit 6.

80. On May 29, 2025, the contracting officer denied the Certified Claim. *Id.*

81. In denying the Certified Claim, the contracting officer acknowledged that as of January 26, 2023, USAF possessed approximately $1,100,000.00 in appropriated funding for the Order, thereby implicitly acknowledging that Congress had passed an appropriations bill as of that date, if not before. *Id.* at 2.

82. The contracting officer further confirmed that USAF continued using UiPath software, without disruption, after expiration of the base period. *Id.* at 4; *see also* Exhibit 16 (acknowledging USAF's continued need); Exhibit 19.

83. The contracting officer further confirmed that USAF continued to use the Licensed Software starting on January 30, 2023. Exhibit 6 at 2, 6.

84. The contracting officer further confirmed that USAF continued to use the same UiPath software, for the same end users, after it declined to exercise OP1. *Id.* at 4.

## COUNT I
## BREACH OF CONTRACT

85. Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

86. USAF's positions as stated in the COFD are not supported by the facts or the law and should be rejected by this Court.

87. The contracting officer issued the Order on September 29, 2022, providing for one base period of four months, and three one-year option periods for a total period of performance of forty months.

88. BFNA relied on the fact that in accepting Telos' Quote, the contracting officer included in the Order terms and conditions specified in the Quote that required USAF to obligate funds and exercise each successive option period so long as Congress appropriated sufficient funds.

89. Although Congress appropriated sufficient funds for each of FY 2023, FY 2024, and FY 2025, USAF failed to allocate sufficient funds to the Order and failed to issue a written modification exercising each of OP1, OP2, and OP3, as required by the Renewal Conditions, once Congress appropriated funds designated for each successive fiscal year.

90. The Contract obligated Telos to acquire and deliver to USAF the Licensed Software for each period of performance—including the Base Period, OP1, OP2, and OP3.

91. Telos timely delivered the License Keys to USAF on September 29, 2022, consisting of licenses for 2,500 end users. The License Keys were issued and delivered by Telos with a total activation period of forty months, starting on September 29, 2022, and ending on January 29, 2026. USAF was fully aware of that fact at the time of delivery.

92. In accepting the License Keys with a forty-month duration, USAF received access to the Licensed Software for not just the Base Period and OP1, but also all of OP2 and OP3. Across all periods of performance (Base Period, OP1, OP2 and OP3), USAF retained access to the Licensed Software, despite having only paid for access to the Licensed Software for the Base Period.

93. USAF continued to use the Licensed Software beyond the Base Period. Starting on January 30, 2023, the first day of OP1's period of performance, USAF's 2,500 end users enjoyed uninterrupted access to and use of the License Keys.

94. Because the License Keys were fully accessible and usable by USAF's end users on January 30, 2023, Telos was entitled to be paid and USAF was obligated to pay the full amount of the License Fee due for OP1—the sum of $1,800,000.00.

95. Because the License Keys were fully accessible and usable by USAF's end users on January 30, 2024, Telos was entitled to be paid and USAF was obligated to pay the full amount of the License Fee due for OP2 ($3,000,000.00).

96. Because the License Keys were fully accessible and usable by USAF's end users on January 30, 2025, Telos was entitled to be paid and USAF was obligated to pay the full amount of the License Fee due for OP3 ($4,550,000.00).

97. USAF used the License Keys for at least fourteen days starting on January 30, 2023.

98. At no time prior to January 30, 2023, or at any time thereafter, did Telos and USAF negotiate a daily license fee for the Licensed Software.

99. At no time prior to January 30, 2023, or at any time thereafter, did Telos and USAF negotiate any change to the agreed-upon period of performance specified for the Base Period, OP1, OP2, or OP3.

100.     By virtue of USAF having failed to exercise the option to extend the Contract in connection with each of OP1, OP2 and OP3—despite having obtained sufficient appropriated funding to cover the cost of the License Fee for each such period—Telos' funding stakeholder, BFNA, has been damaged in the amount of $9,350,000.00.[12]

## COUNT II
## CONSTRUCTIVE EXERCISE OF OPTION PERIODS

101.     Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

102.     USAF's positions as stated in the COFD are not supported by the facts or the law and should be rejected.

103.     On September 29, 2022, Telos delivered to USAF and USAF received from Telos the License Keys, consisting of end user licenses for 2,500 end users. The License Keys had an expiration date of January 29, 2026. USAF inspected and accepted the License Keys. USAF knew or should have known that the License Keys it required and purchased for 2,500 end users for the Base Period were operational through January 29, 2026—the expiration date for OP3.

104.     The Base Period ended on January 29, 2023.

105.     USAF continued to access and use the License Keys on and after January 30, 2023.

106.     Telos later delivered, or caused to be delivered, to USAF additional license keys for OP2 to allow up to an additional 2,000 end users, in addition to the 2,500 end users active during the Base Period and OP1. The OP2 License Keys had an expiration date of January 29, 2026.

---

[12] Claimed damages across all counts reflect the total amount due under the Order, to be paid in accordance with the terms of the Funding Agreement and the Assignment Agreement.

107.      On information and belief, USAF continued to possess the License Keys and OP2 License Keys as of May 29, 2025 (the date USAF issued the COFD) and the License Keys and OP2 License Keys remain in USAF's possession as of the filing of this Complaint.

108.      USAF failed to return to Telos the License Keys and, upon receipt, the OP2 License Keys.

109.      Upon information and belief, at no time since January 30, 2023, did USAF take any actions to delete, destroy, remove, or deactivate the License Keys or the OP2 License Keys from its information technology system or components thereof. USAF end users continued to use the Licensed Software in February 2023, and USAF continued to use UiPath software throughout 2023, 2024, and 2025.

110.      USAF retained physical possession, legal custody, and control of the License Keys and the OP2 License Keys beyond the January 29, 2023 expiration date for the Base Period, the January 29, 2024 expiration of OP1, and the January 29, 2025 expiration of OP2.

111.      Telos fully performed its obligations under the Order.[13]

112.      Starting on January 30, 2023, USAF availed itself of the benefits of the Licensed Software for the twelve-month period of performance agreed upon for OP1, thereby obligating itself to pay the full portion of the License Fee agreed upon for OP1, the sum of $1,800,000.00.

113.      Starting on January 30, 2024, through its continued possession, legal custody, and control of the License Keys, plus the OP2 License Keys, USAF had access to the benefits of the Licensed Software for 4,500 end users for the twelve-month period of performance agreed to for

---

[13] In light of its submission of the Certified Claim to USAF on August 19, 2024, Telos did not deliver to USAF the remaining licenses due for OP3. Instead, Telos returned those licenses to FedResults under demand for refund. FedResults has disclaimed any liability for the returned licenses.

OP2 and thereby constructively exercised OP2, obligating itself to pay the full portion of the License Fee due for OP2, the sum of $3,000,000.00.

114.     Starting on January 30, 2025, through its continued possession and legal custody and control of the License Keys, plus the OP2 License Keys, USAF had access to the benefits of the Licensed Software for 4,500 end users for the twelve-month period of performance agreed to for OP3 and thereby constructively exercised OP3, obligating itself to pay the full portion of the License Fee due for OP3, the sum of $4,550,000.00.

115.     To date, USAF has not paid the full amount of the License Fee agreed upon for each of OP1, OP2, and OP3.

116.     By virtue of the above stated actions and inactions, USAF constructively exercised each of OP1, OP2 and OP3, and constructively obligated itself to pay the agreed upon License Fee for each such period of performance.

117.     As a result of USAF's failure to pay the full amount of the License Fee for the constructively exercised OP1, OP2 and OP3, Telos' funding stakeholder, BFNA, has been damaged in the amount of $1,800,000.00, $3,000,000.00 and $4,500,000.00, respectively, and in total, $9,350,000.00.

## COUNT III
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

118.     Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

119.     USAF's positions as set forth in the COFD are not supported by the facts or the law and should be rejected.

120.     The duty of good faith and fair dealing is imposed upon each party in a contract.

121.    USAF's actions and inactions undermined the reasonable expectations of the contracting parties, including BFNA, leading up to award of the Order.

122.    USAF accepted the Renewal Conditions and incorporated them into the Order, voluntarily limiting the broad discretion it otherwise would have enjoyed to exercise or not exercise an option period. Specifically, under the Renewal Conditions, USAF was required to exercise each option period unless Congress did not appropriate sufficient funding to pay for continued performance during that option period.

123.    On September 30, 2022, Congress authorized sufficient funding for FY 2023, followed by additional authorization and appropriations bills in December 2022.

124.    Between September 30, 2022 and January 29, 2023, USAF possessed sufficient appropriated funding with which to pay for performance during OP1. As such, the condition upon which USAF could elect not to exercise OP1 (a lack of sufficient appropriated funding) was not satisfied. Once USAF possessed sufficient funding, it was obligated by the Renewal Conditions to issue a modification or other writing by an authorized government official, formally exercising OP1.

125.    USAF disregarded the Renewal Conditions, as evidenced by its actions and inactions during the period of January 27, 2023 to February 9, 2023 and its failure to adhere to the Order terms and conditions, instead claiming that its discretion to exercise (or not) OP1 and subsequent option periods was absolute, despite the plain language of the terms to which it had agreed.

126.    The foregoing actions and inactions constituted a breach of USAF's duty of good faith and fair dealing toward Telos and its funding stakeholder, BFNA.

127.     USAF further breached its duties of good faith and fair dealing when it set out to obtain the same suite of UiPath software through an alternative source, thereby diverting to a third party the funding that should have been allocated to the Order and paid to Telos for the portion of the License Fee due for OP1, OP2, and OP3.

128.     USAF did not deal in good faith and did not treat either Telos or BFNA fairly when USAF sought an alternative source for obtaining the same suite of UiPath software for which it had already contracted with Telos while it was in possession and full control of the digital License Keys provided by Telos for up to 2,500 end users for each of the Base Period and OP1, OP2 and OP3.

129.     USAF did not deal in good faith and did not treat Telos or BFNA fairly when USAF committed to acquire and thereafter did acquire the same suite of UiPath software—for which the government presumably expended FY 2023 appropriated funding—from an alternative source which, according to the contracting officer, was another federal agency.

130.     USAF did not deal in good faith and did not treat Telos or BFNA fairly when USAF started the process of trying to identify another source from which or through which it could acquire the same suite of UiPath software, a process that, as a practical matter, must have commenced weeks or even months leading up to the Base Period expiration date of January 29, 2023.

131.     USAF did not deal in good faith or treat fairly Telos or BFNA when USAF, starting in late January 2023 and continuing into early February 2023, delayed exercising OP1 by seeking a "grace period" on payment for that option period, then unilaterally interpreting that "grace period" to permit continued use of the Licensed Software, while simultaneously completing arrangements to acquire the same UiPath software from another source.

132.     USAF awarded the Order to Telos in exchange for significant consideration in the form of a discounted License Fee and the opportunity to pay the License Fee in four installments, instead of a lump sum amount due upon delivery of the License Keys.

133.     After awarding the Order, USAF unilaterally eliminated the contractual benefit it negotiated with Telos by reducing the period of performance to one-tenth of the anticipated length —from forty months to just four months—a ninety percent reduction in the benefit that Telos and BFNA reasonably expected to receive.

134.     As early as September 30, 2022, the Government possessed sufficient FY 2023 appropriated funding to cover the portion of the License Fee due for OP1. As of that date, by operation of the Renewal Conditions, USAF was required to obligate that appropriated funding to fund OP1.

135.     Despite that obligation, USAF did not obligate sufficient funds to the Order, and did not issue a written modification exercising OP1.

136.     USAF's breach of the covenant of good faith and fair dealing undermined the reasonable expectations of the contracting parties, deprived Telos's funding stakeholder, BFNA, of the value bargained for under the Order, and prevented Telos' funding stakeholder, BFNA, from realizing the benefits it expected to realize when it provided Telos with the funds necessary to purchase and deliver to USAF the software licenses required for performance of the Order.

137.     As a result of USAF's breach of the covenants of good faith and fair dealing, Telos' funding stakeholder, BFNA, has been damaged in the amount of $9,350,000.00.

## COUNT IV
## CARDINAL CHANGE

138.     Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

139.     USAF's positions as set forth in the COFD are not supported by the facts or the law and should be rejected.

140.     By its actions and inactions, USAF disregarded its duties and obligations under the Renewal Conditions and thereby materially changed the Order by unilaterally eliminating the protections afforded Telos, and by extension its funding stakeholders, effectively shifting onto BFNA a material risk of loss that was neither contemplated nor bargained for at the time the Order was awarded.

141.     The change was not reasonably contemplated or bargained for by Telos' funding stakeholders and constituted an out-of-scope modification of the Order.

142.     The change constituted a cardinal change to the Order, effectuated through USAF's actions and inactions, rather than through issuance of a formal written modification or change order.

143.     By virtue of the cardinal change resulting from USAF's actions and inactions, Telos' funding stakeholder, BFNA, has been damaged in the amount of $9,350,000.00.

## COUNT V
## CONSTRUCTIVE CHANGE

144.     Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

145.     USAF's positions as set forth in the COFD are not supported by the facts or the law and should be rejected.

146.     In acting unreasonably and abusing its discretion by disregarding its duties and obligations under the Renewal Conditions USAF constructively and materially changed the Order. Specifically, USAF unilaterally eliminated the benefit afforded Telos and its funding stakeholders,

including BFNA, effectively shifting onto BFNA a material risk of loss that was neither contemplated, nor bargained for at the time the Order was awarded.

147.    By virtue of the constructive material change resulting from USAF's actions and inactions, Telos' funding stakeholder, BFNA, has been damaged in the amount of $9,350,000.00.

**COUNT VI**
**CONSTRUCTIVE TERMINATION FOR CONVENIENCE**

148.    Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

149.    USAF's positions as set forth in the COFD are not supported by the facts or the law and should be rejected.

150.    USAF did not issue a modification or other writing terminating the Order either for convenience of the government or for default.

151.    USAF by its actions and inactions constructively terminated the order for convenience of the government.

152.    The government's convenience was driven by USAF's decision to acquire the same suite of UiPath software from a different source, despite the obligations set forth in the Order.

153.    USAF failed to timely allocate funding from available FY 2023 appropriations and thereafter failed to obligate such funding to the Order.

154.    USAF disregarded its duties and obligations as defined in the Renewal Conditions.

155.    On information and belief USAF misconstrued a reference by Telos to a "grace period" under the terms of license, which ostensibly would have allowed USAF an additional fourteen days to remit payment of the portion of the License Fee due for OP1 without disruption of service, as instead allowing for extension of the Base Period, despite no such Order modification taking place.

156.     After continuing to use the Licensed Software beginning on January 30, 2023—the first day of OP1 period of performance—USAF issued a notice on or about February 9, 2023 informing Telos that it decided not to exercise OP1 due to a lack of funding, but not informing Telos that it would have access to the same suite of UiPath software which was purchased by another agency.

157.     The above actions and inactions constitute a constructive termination for convenience of the Order.

158.     The Order includes FAR 52.212-4 under which Telos, on behalf of its funding stakeholder, BFNA, is entitled to recover a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges resulting from the termination, including the unamortized cost of acquisition of the Licensed Software.

159.     The unamortized cost of acquisition of the Licensed Software is $9,350,000.00.

160.     Because USAF constructively terminated the Contract, Telos' funding stakeholder, BFNA, is entitled to the balance of the contract price—$9,350,000.00—plus the claim preparation costs for USAF's termination for convenience in an amount to be determined.

## COUNT VII
## EQUITABLE ESTOPPEL

161.     Each paragraph above is repeated and incorporated by reference as if fully set forth herein.

162.     USAF's positions as set forth in the COFD are not supported by the facts or the law and should be rejected.

163.    USAF is equitably estopped from asserting that it did not limit its discretion to exercise OP1, OP2, and OP3 under the Order.

164.    To the extent USAF was required to consider one or more factors when deciding whether to exercise an option period, there is evidence to support the conclusion that it did so in connection with the option periods established in the Order.

165.    Specifically, in connection with OP1, USAF confirmed via its words and actions that it considered at least six of the factors prescribed at FAR 17.207(c)—specifically factors (2), (3), (4), (5), (6), and (7) (collectively, the "207 Analysis").[14] The January 27 Memorandum, which informed Telos of USAF's intent to exercise OP1, provides direct evidence that USAF performed a 207 Analysis and concluded that all factors (other than factor (1)) were satisfied no later than January 27, 2023. In issuing its intent to exercise OP1, USAF implicitly confirmed that Telos had performed the base period satisfactorily, that Telos possessed satisfactory evaluations on other contract actions, and that USAF had considered and found all other FAR 17.207(c) factors to be satisfied—with the exception of factor (1). As discussed above, USAF had in fact also obtained sufficient funds to satisfy factor (1) through Congressional appropriations.[15]

_____

[14] FAR 17.207(c): "The contracting officer may exercise options only after determining that – (1) Funds are available; (2) The requirement covered by the option fulfills an existing Government need; (3) The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered; (4) The option was synopsized in accordance with part 5 unless exempted by 5.202(a)(11) or other appropriate exemptions in 5.202; (5) The contractor does not have an active exclusion record in the System for Award Management (see FAR 9.405-1); (6) The contractor's past performance evaluations on other contract actions have been considered; and (7) The contractor's performance on this contract has been acceptable, e.g., received satisfactory ratings."

[15] Other indications that USAF had considered and satisfied the FAR 17.207 factors include the January 26, 2023 email from Ms. Zukowski (USAF) to Mr. Hoosen (Telos) confirming that USAF continued to require undisrupted access to and use of the Licensed Software beyond the January 29, 2023 expiration of the Base Period; the contracting officer's acknowledgement that USAF continued using the Licensed Software beyond the start date of OP1; USAF's issuance of the RFQ,

166.    Prior to issuing the RFQ, USAF determined and memorialized in the J&A that it had a bona fide need for the UiPath software, that it required a minimum of 2,500 end user licenses for the Base Period and OP1, and that it required up to 17,000 end user licenses across all periods of performance.

167.    On information and belief, USAF also determined prior to February 9, 2023, and likely even earlier, that it could obtain UiPath software from an alternate source, and that the alternately sourced UiPath software would be available to it as early as January 30, 2023.

168.    Neither the RFQ nor the J&A, however, informed offerors that USAF's requirement for UiPath software as contemplated by the RFQ was temporary or of short duration.

169.    Leading up to award of the Order, Telos' funding stakeholder BFNA believed, based on the terms of the Order and the J&A, that USAF anticipated using UiPath software for the full forty months. BFNA did not know, and could not have known, that USAF would require Telos to furnish the Licensed Software for a period of just four months.

170.    Instead, Telos and its funding stakeholders relied upon the RFQ, the J&A, and discourse with USAF—each of which referred to a bona fide need for UiPath software for a total period of forty months—in deciding how best to meet USAF's planned long-term requirements while achieving the lowest price for the government.

171.    Leading up to award of the Order, BFNA had no reason to believe that during the term of the Order, USAF would seek out other sources to provide UiPath software, that USAF would seek to avoid or negate its obligations under the Order, including the obligation to exercise each successive option period to the extent sufficient funds were appropriated, or that USAF would

which synopsized the necessary requirements and exceptions set forth in FAR Subpart 5.2; and the SAM registration of Telos showing no active exclusion record now or as of January 2023.

acquire from another source the same suite of UiPath software for which it had already contracted with Telos.

172.     Telos provided USAF with favorable financing arrangements allowing USAF to pay for the Licensed Software in four installment payments, instead of having to pay the License Fee of $10,100,000.00 up front.

173.     USAF explicitly modified the Order to include the terms and conditions provided by Telos (including the Renewal Conditions). USAF made no changes to those terms and conditions.

174.     USAF knew, or should have known, that Telos and its funding stakeholders would rely on its statements and the information that it provided in the RFQ, including the J&A, as well as its inclusion of the Renewal Conditions in the Order, when purchasing all 17,000 end user licenses to be furnished to USAF over forty months.

175.     In reliance on USAF's statements prior to awarding the Order, Telos' funding stakeholder, BFNA, incurred up front a substantial financial obligation to secure favorable pricing under the Order and favorable payment terms for the benefit of USAF.

176.     Telos and its funding stakeholders were not aware that USAF did not intend to exercise OP1, regardless of the availability of FY 2023 appropriated funding.

177.     Telos's funding stakeholder, BFNA, relied on the fact that the Order would necessarily include the Renewal Conditions, limiting USAF's discretion with regard to exercising OP1, OP2, and OP3, when agreeing to provide Telos with the necessary funds to support performance of the Order.

178.     Telos fully performed under the Order.

179.    Therefore, USAF is equitably estopped from denying liability for its actions and inactions in avoiding its duties and obligations under the Order and thereby depriving Telos' funding stakeholder, BFNA, of the benefit of the bargain, and causing them to sustain damages in the amount of $9,350,000.00.

## REQUEST FOR RELIEF

WHEREFORE, Telos respectfully requests this Court grant judgment in its favor, and grant the following relief:

a.    Declare USAF breached the Order, because in advance of each of OP1, OP2, and OP3, USAF (i) possessed sufficient appropriated funding to cover the full cost of the agreed upon License Fee for each respective option period, and (ii) by operation of the Renewal Conditions, had voluntarily limited its discretion to not exercise the option upon possession of sufficient appropriated funding to pay for continued access to and use of the Licensed Software for each of OP1, OP2 and OP3, but (iii) failed to issue a written modification exercising each successive option period once such funding had been appropriated by Congress, as required under the Renewal Conditions, and thereby damaged Telos' funding stakeholder, BFNA, in the amount of $9,350,000.00;

b.    In the alternative, declare that USAF, by its decision to continue using the Licensed Software starting on January 30, 2023, and its continued possession and legal custody of the Licensed Software through OP1, OP2, and OP3, constructively exercised each of OP1, OP2, and OP3, and was therefore obligated to pay the agreed upon sums of (1) $1,800,000.00 constituting the

portion of the License Fee due for OP1, and thereafter (2) $3,000,000.00 constituting the portion for the License Fee due for OP2, and thereafter (3) $4,550,000.00 constituting the portion of the License Fee due for OP3;

c.      In the alternative, declare USAF breached the covenant of good faith and fair dealing under the Contract, thereby damaging Telos' funding stakeholder, BFNA, in the amount of $9,350,000.00;

d.      In the alternative, declare that USAF's failure to issue a written modification or other writing as contemplated by FAR 52.217-9 and the other terms of the Order formally exercising OP1, and subsequently OP2 and OP3, respectively, despite the availability of sufficient appropriated funding for FY 2023, and thereafter FY 2024, and thereafter FY 2025, constituted a cardinal change to the Order entitling Telos, on behalf of its funding stakeholder, BFNA, to an upward adjustment of $9,350,000.00 to the License Fee for the Base Period;

e.      In the alternative, declare that USAF constructively changed the Order terms by constructively deleting the Renewal Conditions in an effort to evade USAF's obligations under the Order, thus entitling Telos, on behalf of its funding stakeholder, BFNA, to an upward adjustment of $9,350,000.00 to the License Fee for the Base Period;

f.      In the alternative, declare that the failure to formally exercise OP1, thereby eliminating OP2 and OP3, constituted a constructive partial termination for convenience by USAF, thereby eliminating thirty-six of forty months of the agreed upon software financing provisions, thus entitling Telos, on behalf of BFNA, to seek payment under FAR 52.212-4 for the percentage of the contract

price reflecting the percentage of the Order performed prior to the notice of termination, a total of $9,350,000.00, plus reasonable charges resulting from the termination;

g.      Declare USAF is equitably estopped from denying liability for its actions and inactions under the Order;

h.      Enter judgment for Telos, for the benefit of its funding stakeholder BFNA, in the total amount of $9,350,000.00 plus interest accrued under the Contract Disputes Act in the amount of no less than $601,025.68 (as of the date of filing), under one or more of Counts I-VII;

i.      If appropriate, order that Telos, on behalf of its funding stakeholder, BFNA, is permitted in accordance with Rule 54 to prepare and submit an application for recovery of attorney fees and costs; and

j.      Grant such further relief as the Court may deem just and proper.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

Dated: December 31, 2025                    /s/ C. Peter Dungan
                                            Miles & Stockbridge P.C.
                                            1201 Pennsylvania Ave NW
                                            Suite 900
                                            Washington, D.C. 20004
                                            (202) 524-8055
                                            pdungan@milesstockbridge.com

                                            *Attorney of Record, Telos Corporation*

Of Counsel:

Cameron S. Hamrick
Miles & Stockbridge P.C.
1201 Pennsylvania Ave NW
Suite 900
Washington, DC 20004
(202) 465-8383
chamrick@milesstockbridge.com

Counsel for BFNA:

Hilary S. Cairnie
Troutman Pepper Locke LLP
401 9th St. NW, Suite 1000
Washington, D.C. 20004
(202) 220-1207
hilary.cairnie@troutman.com

Bonnie S. Gill
Troutman Pepper Locke LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
(804) 697-1210
bonnie.gill@troutman.com

**EXHIBIT LIST**

| Exhibit No. | Description |
|---|---|
| Ex. 1 | Master Purchase Agreement, dated August 23, 2022, *and* Schedule No. 1 to Master Purchase Agreement, dated October 4, 2022 |
| Ex. 2 | Assignment Agreement from ePlus to BankFinancial, dated November 10, 2022 |
| Ex. 3 | Agency Agreement – Paying Agent for ePlus, dated Mar. 20, 2017 |
| Ex. 4 | Notice of Assignment to Wilmington Trust, dated October 4, 2022 |
| Ex. 5 | Attachment A to Agency Agreement, dated November 10, 2022 |
| Ex. 6 | Contracting Officer's Final Decision on Contractor Claim, dated May 29, 2025 |
| Ex. 7 | Draft Request for Quote (FA8771-22-Q-0045), dated September 20, 2022, *and* Request for Quote (FA8771-22-Q-0045), dated September 22, 2022 |
| Ex. 8 | Telos Quote (No. 13734-092922.40M.00), dated September 29, 2022 |
| Ex. 9 | Delivery Order for UiPath licenses (No. FA877122F0109), dated September 29, 2022 |
| Ex. 10 | Email Delivery of UiPath License Keys, dated October 1, 2022 |
| Ex. 11 | Certificate of Acceptance of Software, dated September 29, 2022 |
| Ex. 12 | Material Inspection and Receiving Report, dated October 3, 2022 |
| Ex. 13 | Telos Invoice No. 223003, dated October 27, 2022 |
| Ex. 14 | Payment Instructions from ePlus to BankFinancial, dated November 10, 2022 |
| Ex. 15 | Email Notification of Telos Payment to ePlus, dated December 22, 2022 |
| Ex. 16 | Emails between Telos and USAF, dated January 25–26, 2023 |
| Ex. 17 | Notice of Intent to Exercise Option One and Acceptance of Grace Period for OP1 Payment, dated January 27, 2023 |
| Ex. 18 | UiPath Software License Agreement, dated January 15, 2019 |
| Ex. 19 | Press Releases, dated July 14, 2025 and September 2, 2025 |
| Ex. 20 | Notice of Intent to Not Exercise Option One, dated February 9, 2023 |
| Ex. 21 | Second Delivery of License Keys, dated February 1, 2024 |